UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
Jazzmin Williams,

            Petitioner,

                -against-

William Phillips,
Superintendent of Green Haven Correctional
Facility,

            Respondent.
--------------------------------------------------------X

REPORT & RECOMMENDATION

04 Civ. 6933 (SCR) (MDF)

TO: THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.

      Petitioner, pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. §2254 to challenge his convictions for murder in the second degree (N.Y. Penal Law §125.25 subd. 2 (depraved indifference to human life)) and criminal possession of a weapon in the second degree (N.Y. Penal Law §265.03). The Dutchess County Court, Judge Marlow, sentenced him to concurrent terms of imprisonment the longest of which is twenty-five (25) years to life. The Appellate Division, Second Department, affirmed the convictions. People v. Williams, 296 A.D.2d 560, 745 N.Y.S.2d 700 (2d Dep't 2002), lv. denied, 99 N.Y.2d 540, 782 N.E.2d 579, 752 N.Y.S.2d 601 (2002).

      Thereafter, Petitioner filed an application for writ of error coram nobis to raise a claim of ineffective assistance of appellate counsel. The Appellate Division, Second Department, denied this application. People v. Williams, 6 A.D.3d 467, 774 N.Y.S.2d 347 (2d Dep't 2004), lv. denied, 3 N.Y.3d 650, 782 N.Y.S.2d 421 (2004).

1

The evidence most favorable to the verdict discloses that after a street encounter, Petitioner, without any regard for the safety of bystanders, closed his eyes and fired a gun thirteen (13) times. One of the bullets killed Ross Collier.

On or about January 13, 1998, two men approached Ernie Vines, a friend of Petitioner, in front of the Nu-Tribe Barber Shop. Vines then went to Petitioner's house where he asked Petitioner's brother, Laverne Williams (a/k/a Duddy), and Gregory Parker (a/k/a Quazeek) to go with him to the barber shop to "talk to them" and "stop the problems." Tr. 659. While on their way they met up with Petitioner who joined them. When they reached the barber shop, the two men were exiting the store next to the barber shop. One was later identified as Ross Collier and the other was never identified, but was referred to by the state trial court as the "second man." Tr. 580. Petitioner and his friends approached the two men, and the "second man" grabbed Vines by the arm. Vines noticed a gun in the man's waist band and pulled away. Collier then pulled out a knife, repeatedly swung it and cut the arm of Petitioner's coat. In response, Petitioner, Vines, Parker, and Laverne Williams fled in different directions. The matter, however, was apparently unresolved.

On January 17, 1998, Vines observed police cars on the street near his grandmother's house. He asked her what had happened, and she told him that some shots had been fired. The following day, Vines asked Petitioner if he knew anything about the shots and Petitioner stated that he had done the shooting. Petitioner told Vines that he had seen the "second man" in an automobile with a girl and that although he shot at him, he had not hit the "second man."

On January 22, 1998, at about 2:00 p.m., Petitioner was driving on Main Street in the

City of Poughkeepsie with Vines, Rasham McClinton (a/k/a Shammy) and Tommel Hill (a/k/a Stinky). There were a lot people on the street, tr. 500, 505, and McClinton saw and pointed out Ross Collier who was riding a bicycle. Petitioner then pulled around the block and parked. The four (4) of them exited the car and walked to the corner of Cherry Street and Cannon Street. Collier was now riding his bike toward them. They were standing near a Rite Stop store and several other businesses which had customers exiting and entering, and were across the street from residential apartment buildings. As Collier approached, Petitioner closed his eyes and fired a nine-millimeter handgun randomly in his direction until the clip was empty. Tr. 856. The thirteen (13) shell casings later found by police were spread over a twenty (20) to thirty (30) foot area, which supports the inference that Petitioner was moving while he repeatedly fired the gun. Tr. 343. One (1) of the shots hit Collier in the torso, damaged his liver, lungs and heart, and caused his death. Tr. 521. Of the remaining shots, although the police recovered all of the shells they only found some of the bullets. A bullet hole in the door of a van parked near the Rite Stop led to the bullet on the dashboard. There was a bullet hole in the soffit above one of the side doors of the Rite Stop. One jacket was recovered from the sidewalk adjacent to the Rite Stop. From the Clinton Apartments, which are located directly across the street from the Rite Stop on the north side of Main Street, numbers 521-527, the police found evidence of multiple bullets. In apartment 11 on the first floor of 523 Main Street, they found a bullet hole in the window and another bullet hole in a panel which appears to have covered piping in the bathroom. They did not recover any bullets from this location. Tr. 259-260. In apartment 15 on the third floor of 523 Main Street they found a bullet hole in a window and a hole in the wall where the bullet landed. An officer recovered a bullet from that hole. Tr. 266. On the first floor apartment of 525 Main

Street the police found one bullet in an air conditioner and at least one from a doorway and perhaps another in an unspecified location. Tr. 269. Inside 525 Main Street, apartment 26 on the third floor, there was a bullet hole in the window, another bullet hole in a locker adjacent to the window and a bullet projectile in the windowsill. Tr. 270.

After emptying the clip, Petitioner and his friends ran back to the car without checking on Collier's condition or if anyone else in the area had been injured. On the way to the car, Petitioner threw the empty clip in the bushes and reloaded the gun. Tr. 856-857. The four (4) of them then drove to Petitioner's mother's apartment.

With the help of a partial license plate number, police arrived at Petitioner's home within one (1) hour of the shooting. After receiving permission from Petitioner's mother to enter, the police arrested all four (4) men plus Petitioner's brother and Parker who were also in the apartment. Police searched the apartment and recovered the nine-millimeter firearm used to shoot Ross Collier.

After being brought to the police station and receiving <u>Miranda</u> advisements, Petitioner waived his rights, tr. 830, and admitted the homicide. He told the detective that he saw Collier reach toward his pants pocket and was scared Collier might have a gun. Without speaking or giving Collier a chance to speak, he had pulled out his gun, closed his eyes, and fired until the gun's clip was empty. Tr. 856.

The Petition initially pled two (2) grounds: (1) the evidence was insufficient to support the jury's finding of depraved indifference murder; and (2) Petitioner was denied the effective assistance of appellate counsel. In his reply Memorandum of Law at 5-6 (doc. # 9), Petitioner also appears to be raising one of two claims presented in the first point of his brief on direct

appeal: the state trial court erred in allowing the State to introduce allegedly prejudicial evidence of an uncharged crime. Given that this claim was fully exhausted in the state courts, I am treating the argument as an amendment to the Petition and will address it as Ground Three.

**Ground One**

The nature of Petitioner's challenge to the sufficiency of the evidence has changed as the proceedings have progressed. On direct appeal Petitioner's attorney argued that the record lacked any evidence to support the wantonness and viciousness required to support depraved indifference to human life as compared to other cases where depraved indifference had been sustained on appeal. Resp. Exh. 4 (Brief of Appellant at 29-33). In the Petition, Petitioner reiterated this point. Pet. at 13-14. In his reply Memorandum of Law (doc. #9) he argues that there was no proof of recklessness because the jury could only conclude that he had intended to kill Collier, even though the jury acquitted him of intentional murder.

In considering a challenge to the sufficiency of the evidence of a state criminal conviction, a federal habeas court looks to state law to determine the elements of the crime and reviews the evidence in the light most favorable to the State. A petitioner is entitled to relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based upon the evidence presented at trial. Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002).

> Under New York law,... [a] defendant may be found guilty of depraved indifference murder where, "[u]nder circumstances evincing a depraved indifference to human life, he *recklessly* engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." [N.Y. Penal Law] §125.25(2).
>
>> A person acts *recklessly* with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard

5

> thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation...
>
> [N.Y. Penal Law] §15.05(3). It is thus an element of depraved-indifference murder that the defendant was indifferent to whether his or her acts would result in the victim's death.

Policano v. Herbert, 430 F.3d 82, 87 (2d Cir. 2005) (emphasis added). In Policano the Second Circuit Court of Appeals recently certified questions to the New York Court of Appeals which specifically ask that Court to indicate what the elements of depraved indifference murder were at the time Policano's conviction became final. Policano v. Herbert, __ F.3d __, __ (2d Cir. June 21, 2006) (slip op. at 8749) (per curiam) (2006 Westlaw 1892587). Mere days later in People v. Feingold, ____ N.Y.3d __, __, __ N.Y.S.2d __, __ (July 5, 2006) (2006 Westlaw 1814378) the New York Court of Appeals reviewed its decisions on the subject of depraved indifference to human life and concluded that it is a culpable mental state or mens rea of the offense subject to proof by circumstantial evidence. "[D]epraved indifference is best understood as an utter disregard for the value of human life-a willingness to act not because one intends harm, but because one simply doesn't care whether harm results or not." Id. at __ (relying on People v. Suarez, 6 N.Y.3d 202, 214, 811 N.Y.S.2d 267, 276 (2005) (per curiam)).

Given that Petitioner was charged with intentional murder, the State understandably sought to demonstrate that he had motive to kill Ross Collier when he fired a gun in his direction. The jury, however, was not required to accept that line of reasoning and apparently it did not because it acquitted Petitioner of intentional murder. Under the circumstances of this case the acquittal of intentional murder does not ipso facto mean that the jury could not find recklessness and depraved indifference merely because Petitioner succeeded in hitting a target

6

that he had a motive to hit. From Petitioner's closed eyes and multiple firings, the jury could reasonably infer that Petitioner did not care whether he hit anyone with a bullet and thereby killed an individual. The risk that he might do so where people were around on the street or where bullets might penetrate residential window glass is quite high regardless of whether anyone was actually hit or whether the structures were actually occupied. In this respect People v. Callender, 304 A.D.2d 426, 760 N.Y.S.2d 408 (1st Dep't 2003), lv. denied, 100 N.Y.2d 641, 769 N.Y.S.2d 207 (2003) is instructive:

> Defendant maintains that he was simply trying to disperse a crowd of noisy teenagers watching a fist fight, and that he acted with mere recklessness by pointing a pistol straight ahead from his 15th-floor balcony and discharging it. However, the evidence established that defendant fired shots directly at the crowd below his balcony. As defendant concedes, firing into a crowd of people is a classic example of depraved indifference murder (*People v. Fenner,* 61 N.Y.2d 971, 475 N.Y.S.2d 276, 463 N.E.2d 617 [firing several shots at patrons as they attempted to flee a crowded poolroom]; *see also People v. Jernatowski,* 238 N.Y. 188, 144 N.E. 497 [firing several shots into occupied dwelling]).

Id. Petitioner's repeated discharge of a firearm where people were likely to be without any regard for whether they actually were there is no less evidence of depraved indifference to human life.

**Ground Two**

To obtain relief for a claim that he was denied the effective assistance of counsel on appeal, Petitioner must demonstrate that the issue appellate counsel failed to raise was sufficiently meritorious that if it had been raised the Appellate Division would have been required to grant relief. See Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995) (cases cited therein); Johnson v. Walker, 74 F. Supp.2d 287, 301 (W.D.N.Y. 1999) (cases cited therein). Petitioner contends that habeas corpus relief should be granted based on his appellate counsel's

7

failure to present a claim that his Sixth Amendment right to a public trial was violated. Petitioner alleges that without conducting the analysis required by Waller v. Georgia, 467 U.S. 39 (1984), the state trial court instructed some individuals to leave the courtroom and that the courtroom doors were locked during the final portion of Ernie Vines' testimony. Pet. at 19-20. Petitioner fails to cite any portion of the record which supports his allegation.

In an affidavit submitted with respect to Petitioner's coram nobis application, which exhausted the instant ground in the state courts, Petitioner's appellate counsel, Cristina D'Amato Arvoy, stated:

> As I was not in the courtroom during the trial, I lack any direct knowledge of the circumstances, but the transcript indicated that certain spectators were asked to leave the courtroom during the testimony of ERNIE VINES as the witness felt that these spectators, allegedly members of the "Mad Drama" gang, were intimidating him.

Resp. Exh. 11 at ¶8. Like Petitioner, Arvoy never cites the portion of the transcript which supports her averment.

In opposition to the coram nobis application, the Assistant District Attorney, who represents the Respondent in this proceeding, observed that the record did not factually substantiate Petitioner's allegation. Resp. Exh. 12 ¶6, 17. The trial transcript supports Respondent's counsel.

On redirect, in the midst of testimony concerning a trip Vines had made to Kingston, New York, the prosecutor elicited testimony that prior to the trip, Vines had been robbed by four (4) members of a group called Mad Drama, some of whose members were then present in the courtroom. Tr. 764-766. After Vines stated that the Mad Drama members were present, the examination returned to the Kingston trip with Duddy. When the prosecutor asked Vines to

relate what Duddy had told him regarding what to say to assist Petitioner, defense counsel objected:

> MR. PETRO [defense counsel]: Objection to the form.  Once again, Judge, sidebar.
>
> (An off the record discussion took place.)
>
> ***************
>
> The following took place out of the presence of the jury:

[Defense counsel explained the nature of his objection about what was said to the witness on the trip to Kingston, following which the state trial court seems to have changed the subject].

THE COURT:  Am I correct that it's his brother in the Courtroom?

MR. PETRO:  No.

THE COURT:  Is the guy sitting over on the left side, my left?

MR. PETRO:  Yeah.

THE COURT:  The guys he's talking about?

MR. WEISHAUPT:  Yes.

THE COURT:  One in the red shirt?

MR. WEISHAUPT [the prosecutor]:  Yes, he's one of them.

THE COURT:  The one in the white shirt.

MR. WEISHAUPT:  He's one of them.

MR. PETRO:  I told him if he pointed them out, I will tell the kids to leave.

MR. WEISHAUPT:  I'm not asking for them to leave.

MR. PETRO:  I don't know who they are. Never been introduced to them.

9

MR. WEISHAUPT: But that has nothing to do with the objection....

Tr. 767-768. This remark ended the digression and returned the discussion to the matter of what Duddy had told Vines on the Kingston trip. The record fails to disclose that the state trial court directed any individual(s) to leave the courtroom or that the courtroom doors were ever locked during a portion of Vines' testimony as Petitioner alleges. Moreover, the context of the remark from Petitioner's trial attorney, "I will tell the kids to leave.", and the prosecutor's response, "I'm not asking for them to leave.", reinforces the absence of any involvement or order by the state trial court. If these spectators left, the record strongly supports the inference that they did so of their own volition and were not excluded. An appellate attorney can hardly be found ineffective for having declined to raise an issue which has no support in the record and which, in the absence of an objection which complied with N.Y. Crim. Proc. Law §470.05, would have been deemed waived. See Garcia v. Lewis, 188 F.3d 71, 81-82 (2d Cir. 1999) (citing New York state cases).

**Ground Three**

Petitioner contends that the state trial court erred in admitting evidence of an uncharged crime, specifically, Vines' testimony concerning the events of January 17, 1998, when Vines had observed police cars on the street near his grandmother's house and learned from his grandmother that shots had been fired and January 18, 1998, when Petitioner, in response to Vines' inquiry, admitted that he had done the shooting. As previously noted, Petitioner told Vines that he had seen the "second man" in an automobile with a girl and that although he shot at him, he had not hit him. The Appellate Division addressed this claim as follows:

> The testimony that the defendant shot at the victim's friend shortly before the date

10

of the incident was probative on the issues of motive and intent, and to rebut the defense of justification (see People v. Alvino, 71 NY2d 233; People v. Jones, 289 AD2d 257). Moreover, the probative value of that evidence outweighed any prejudice to the defendant, particularly in light of the County Court's cautionary instruction that the evidence was to be considered only on the issue of whether the defendant was the initial aggressor (see People v. Corella, 281 Ad2d 428). Accordingly the County Court providently exercised its discretion in admitting that evidence.

296 A.D.2d at 560, 745 N.Y.S.2d at 700.

Confronting a claim of self defense which arose from evidence that Collier was armed and had reached for a gun when they met on the street, the State, through witness Vines, offered evidence that five days prior to killing Collier, Petitioner had shot at the victim's friend, the "second man," who had been part of the incident at the Nu-Tribe Barber Shop on or about January 13, 1998. Before hearing this testimony, the state trial court gave the jury comprehensive instruction as follows:

> You're about to hear testimony from this witness that the Defendant admitted to this witness that approximately, on January 17, 1998 he shot at one of the two men, who had allegedly attacked him and his brother and the others with a knife, and had brandished a gun at the Nu-tribe Barber Shop, less than a week earlier than January 17, 1998.
>
> This testimony, meaning the testimony of this witness, will be to the effect that the Defendant, Jazzmin Williams, admitted to this witness, Mr. Vines, that he, the Defendant, shot at, but did not hit the person, who had been with Ross Collier at the barber shop that day.
>
> The claim further will be that this January 17 shooting was directed at this man, not Ross Collier.
>
> In other words, the second man, while the second man was riding in a car with a girl, but that none of the bullets struck him, meaning the second man.
>
> You will hear further testimony, later in this case, that the shell casings from that January 17 incident were compared to the nine millimeter gun marked in evidence, as an exhibit, which is the alleged murder weapon in this case, and the People are about to introduce that evidence, as evidence that the Defendant on another occasion, committed

11

an alleged wrongful act.

The fact that this Defendant, if you so find it occurred, committed another crime or a bad act on a prior occasion, the prior occasion being January 17, 1998, is no proof whatsoever that the Defendant possessed a propensity or disposition to commit the crime charged in this Indictment, or any other crime. It is not offered for such purpose, and must not be considered by you for that purpose.

Instead, the People offer that evidence of the alleged incident of January 17, 1998, solely for the purpose of advancing their claim. If you find it occurred, that it is relevant on the question of the Defendant's motive for his conduct on January 22, his alleged intent for his conduct on January 22, and it's relevant if you find it occurred, and if you find it's relevant on the question of whether he was or was not the initial aggressor on January 22, 1998, and solely as to those contentions of the Prosecution.

I order you not to consider this evidence, namely the evidence of January 17, even if you find it occurred the way it's described, I order you not to consider it to support some improper notion that this Defendant has some general propensity for violence, or to support such belief that because he shot at someone on January 17, 1998, that it is, therefore, more likely that he shot Ross Collier on January 22, 1998, simply because of a general propensity for violence.

This type of thinking is unfair, and prohibited, and I order you not to engage in such reason.

However, you first must decide whether you believe that the January 17, 1998 incident occurred as it is going to be described. If you find it did not, then you must disregard it entirely. If you find that it did occur, then you may only consider it on the issue of whether the Defendant was the initial aggressor on January 22, 1998.

In other words, the Defendant is claiming that he acted in self-defense on January 22, 1998. The People claim that he was the intial aggressor on January 22, 1998.

You may decide what, if any, value the January 17, 1998 incident, if it's established in your mind, in determining whether he was justified in shooting Ross Collier on January 22, 1998, and for no other reason.

Simply put, the January 17 incident, if it's considered, may only be considered on the question of what was the Defendant's motive and intent when he allegedly shot Ross Collier on January 22, 1998.

I charge you that such evidence may be considered by you only for the limited purpose that I gave you and for none other.

Tr. 671-675. The state trial judge also addressed the limited purpose of the testimony in the final instructions. Tr. 1014-1016.

Improperly admitted evidence renders a trial fundamentally unfair only if it is not probative of an essential element of the offense, the assignment of error has been preserved by a contemporaneous objection and it is "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Sims v. Stinson, 101 F. Supp.2d 187, 194 (S.D.N.Y. 2000) (quoting Dunningan v. Keane, 137 F.3d 117, 124 (2d Cir.), cert. denied, 525 U.S. 840 (1998)). The incident at the barber shop permitted the jury to infer that Petitioner might be "gunning" for the individuals who had been part of that altercation. When he actually went after someone who had acted in concert with the victim of the instant offense, his behavior may have reflected on what he intended at the time he fired a gun in the direction of the victim and whether he had been facing an individual with a gun. If the jury concluded that the prior incident had occurred, it might reasonably ask whether Petitioner had been motivated by that incident when he fired the gun or whether he had been motivated by self defense.

The acquittal on the charge of intentional murder indicates that the prejudice from the admission of this evidence of an uncharged prior crime or bad act was nil in this case. The state trial court limited the jury's consideration of the evidence exclusively to the issues of motive and intent, which also diminished the potential for prejudice. See Miller v. Portuondo, 151 F. Supp.2d 245, 248 (E.D.N.Y. 2001). Motive may be relevant to whether an individual committed a crime, but it is not an element of any homicide. Intent is not an element of depraved indifference murder. People v. Suarez, 6 N.Y.3d 202, 208-211, 811 N.Y.S.2d 267, 272-274

(2005) (per curiam). As jurors are presumed to follow the trial court's instructions, this jury followed the state trial court's limiting instruction and did not consider whether the prior incident had any bearing on the elements necessary to establish the offense of which Petitioner stands convicted, depraved indifference murder.

Based upon the foregoing, I respectfully recommend that Your Honor dismiss this petition for writ of habeas corpus.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (see Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Stephen C. Robinson, at the United States Courthouse, 300 Quarropas Street, Room 533, White Plains New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Robinson. See Thomas v. Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298 (2d Cir.), cert. denied 113 S. Ct. 825 (1992); Small v. Secretary of H.H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); Wesolek v. Canadair, Ltd., 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Robinson and should not be made to the undersigned.

Dated: July ___, 2006

Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298 (2d Cir.), cert. denied 113 S. Ct. 825 (1992); Small v. Secretary of H.H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); Wesolek v. Canadair, Ltd., 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Robinson and should not be made to the undersigned.

Dated: July 27, 2006
White Plains, New York

Respectfully submitted,

_____
Mark D. Fox
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been sent to the following:

Hon. Stephen C. Robinson

Mr. Jazzmin Williams (99-A-0697)
Green Haven Correctional Facility
Stormville, New York, 12582

Bridget Rahilly Steller
Chief Assistant District Attorney
236 Main Street
Poughkeepsie, New York 12601